IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 29, 2011

**TERRY JONES v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Knox County**
**No. 89857    Mary Beth Leibowitz, Judge**

---

**No. E2010-01896-CCA-R3-PC - Filed June 13, 2011**

---

The petitioner, Terry Jones, pleaded guilty to possession with the intent to sell more than twenty-six grams of cocaine, a Class B felony, and received a sentence of ten years in the Tennessee Department of Correction and a $2,000 fine.  He filed a petition for post-conviction relief alleging the ineffective assistance of counsel.  The post-conviction court denied relief, and the petitioner appeals the post-conviction court's denial of relief.  After a thorough review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Albert J. Newman, Jr., Knoxville, Tennessee, for the appellant, Terry Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; and Randall E. Nichols, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

On January 17, 2006, the petitioner, Terry Jones, pleaded guilty in the Knox County Criminal Court to possession with the intent to sell more than twenty-six grams of cocaine, a Class B felony.  The trial court sentenced the petitioner to ten years in the Tennessee Department of Correction and ordered him to pay a $2,000 fine.  As a condition of his guilty plea, the petitioner reserved a certified question of law challenging the denial of his motion

to suppress based upon his allegation that police subjected him to an unconstitutional investigative stop. The facts of the petitioner's case, as summarized by this court's opinion on direct appeal, are as follows:

[T]he proof at the July 15, 2004[,] suppression hearing showed that on October 2, 2001, Knoxville Police Department Officer Melvin Pierce and trainee Officer Anthony Barnes initiated a traffic stop because an automobile was impeding traffic flow in front of Max's Lounge, located at the corner of Harrison Street and Wilson Avenue in Knoxville. The officers observed a female passenger exit the car and enter Max's Lounge. Upon investigation, the officers received permission from the car's driver to search the vehicle, and they found drug paraphernalia. When the officers attempted to enter Max's Lounge to speak with the female passenger, the doors were locked, and no one responded to their repeated knocking.

At some point, Officers Pierce and Barnes called for assistance, and Officers Joseph Mattina, Larry Jason Jones, Doyle Lee, and Sergeant Tammy Hamblin responded. The police officers suspected criminal activity inside Max's Lounge, but they reiterated they only wanted to enter to find the female passenger. The officers also observed several open alcohol containers in the parking lot, and several of the parking lot's cars had registration violations and improper license tags. During their subsequent attempts to enter the lounge, the officers contacted a fire marshal and learned that the lounge was not "per se a business, [but] a private club, [which] could restrict entry." The officers also attempted to gain access via a beer inspector, yet this attempt also failed. Therefore, the officers decided to stand by and observe from a location approximately one and one-half blocks north of the lounge.

The officers observed the lounge's front porch lights flash on and off, and a person exited the lounge, walked around the building, and re-entered the lounge. The officers assumed that the person was looking for them. Seconds after the person re-entered the lounge, a neighbors' house lights came on, and then people began to exit the lounge.

Officer Lee informed the other officers of the exodus, and Officer Mattina was the first officer to stop a vehicle leaving the parking lot. Officers Pierce and Barnes drove south on Harrison Street to ensure Officer Mattina's safety, passing the lounge on their right. When they learned that Officer Mattina did not need assistance, they drove north on Harrison, passing the lounge on their left. Officers Pierce and Barnes both testified that at this point,

-2-

they observed the defendant walking from the lounge's porch towards a Toyota Corolla, and he appeared to be intoxicated because "[h]e was unsteady on his feet [and] had a staggered gait." The testimony is somewhat confusing as to where they drove next, especially since Officers Pierce and Barnes both testified that they could not remember the route they took to effectuate the stop. However, we discern from the record that they continued north on Harrison, made a series of right turns, turned onto Wilson Avenue, and from Wilson Avenue, they drove into Max's parking lot and parked behind the Toyota Corolla, preventing its departure.

As they pulled into the parking lot, a police car was already present. Again the testimony is somewhat unclear as to whether another officer was on the lounge's porch and provided assistance to Officers Pierce and Barnes. Nonetheless, the officers approached the vehicle and spoke with the defendant. Both officers testified that they smelled alcohol, that the defendant's eyes were bloodshot, that his speech was slurred, and that he was "digging at his waistband and in his pockets." Also, the defendant had difficulty exiting his vehicle because he was "extremely unsteady," and he refused to follow the officers' commands. Shortly after exiting the vehicle, the defendant ran in an easterly direction. After a foot chase, the officers caught the defendant. During the chase, Officer Barnes observed the defendant "digging in his pockets" and saw him drop something behind a heat pump. After the chase, Officer Barnes discovered a "baggy" containing approximately 131 grams of cocaine powder behind the heat pump. The officers also found loose crack cocaine rocks and $2,081 cash on the defendant's person.

The trial court denied the defendant's motion to suppress any evidence of drug possession, finding that Officers Pierce and Barnes effected a traffic stop in front of Max's Lounge which led to further investigation of the lounge by Officers Pierce and Barnes and four other police officers in a total of four patrol cars.

*State v. Terry D. Jones*, No. E2006-00228-CCA-R3-CD, 2007 WL 1515011, at *1-3 (Tenn. Crim. App., at Knoxville, May 24, 2007). This court affirmed the trial court's judgment denying the petitioner's motion to suppress. *Id.* On October 22, 2007, the Tennessee Supreme Court denied the petitioner's application for permission to appeal. *Id.*

On August 26, 2008, the petitioner timely filed a pro se petition for post-conviction relief. The post-conviction court found that the petitioner presented a colorable claim and appointed post-conviction counsel for him. The petitioner, through post-conviction counsel,

filed an amended petition for post-conviction relief on January 20, 2009. The state filed a response and an amended response arguing that the post-conviction court should dismiss the petition. On August 12, 2010, the post-conviction court held a hearing on the petition.

At the hearing, trial counsel testified that the petitioner retained him as counsel. He did not remember whether the petitioner was in custody when he hired him or how many times he had met with the petitioner. He recalled that the petitioner pleaded guilty and made a reservation regarding the stop that led to his arrest. Trial counsel said that he thought the police officers' stop of the petitioner was illegal. He said that the basis of the motion to suppress the stop was that "[t]he police officers wanted to get into a private club. The doors were locked." Trial counsel testified that he believed the police officers did not have probable cause to enter the club.

Trial counsel stated that when they could not gain entry into the club,

the police officers backed up a couple of blocks[,] laid in wait, [and] piled up about six police cruisers on a side street. They had a lookout outside of the club. And they decided they were going to pull everybody over as they left the club. The first car left the club [and] the first officer went and pulled [the driver] over.

[The petitioner] came out and . . . started to get into his car. Police officers said they drove by and saw him staggering to his car, except their story did not make any sense because they drove off for two minutes after that and came back around and decided to . . . investigate.

Trial counsel did not believe that the police officers saw the petitioner when he left the bar. He said that when the police officers drove by the second time people were in the car, and the police officers "rousted everybody out of the car." Trial counsel also did not think that the police officers had probable cause to stop the people, and he reserved the issue of whether the officer's had probable cause to stop the petitioner as a certified question for appeal.

Trial counsel said that he "spent tens of hours coordinating the videos and audio[]" of the stop, and he played them at both the trial court and appellate court levels. Trial counsel could not recall the officers' exact testimony from the suppression hearing; however, he said that they "may have said something that was maybe a little bit of a surprise." Trial counsel said that the police officers chased the petitioner and found cocaine near him or on him, and the sole issue was whether the stop was "a good stop." He said that, had the matter gone to trial, he thought that the jury would have found that the petitioner was in possession

of the drugs. Trial counsel stated that the petitioner never asserted his guilt or innocence to him.

On cross-examination, trial counsel stated that he "worked very hard on [the petitioner's] case because [he] believed . . . in the issue. [He] believed that [it] was a bad stop, and [he] spent countless hours getting [the] tapes . . . coordinated." At the motion to suppress hearing, he played the tapes and argued the issue.

The petitioner was in federal custody and was unable to attend the hearing; however, he filed an affidavit asserting that trial counsel was ineffective for failing to (1) attack a "non ranking" officer's decision to stop one car at a time in a non exigent circumstance when a ranking officer was present; (2) investigate Knoxville Police Department's policy on road blocks and checkpoints; (3) stop the suppression hearing after an officer perjured his testimony; and (4) object to the court's ruling "without reviewing all the evidence which [it] would have seen and heard the unconstitutionality from police conduct."

After hearing the evidence, the post-conviction court took the case under advisement. On August 26, 2010, the post-conviction court entered a written order denying post-conviction relief. In its order, the court found that this court had previously determined the petitioner's claims regarding the legality of the road blocks and trial counsel's failure to stop the hearing after the allegedly perjured testimony. The post-conviction court further found that there was no proof that the trial court did not review all of the evidence or that trial counsel was ineffective. Accordingly, the post-conviction court denied the petition for post-conviction relief, and the petitioner now appeals the post-conviction court's denial of relief.

**Analysis**

On appeal, the petitioner argues that he received the ineffective assistance of counsel. Specifically, he argues that trial counsel was ineffective for failing to "conduct a more [thorough] and aggressive examination of the officers, and this failure prevented the trial and appellate court[s] from [having] a more complete record on which to decide if the officers had justifiable reason to stop the car driven by [the petitioner]." He further argues that the trial court disregarded and did not review the video and audio evidence. The state responds that the petitioner did not show that he was entitled to relief by clear and convincing evidence, and the post-conviction court properly dismissed the petition. We agree with the state.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is bound by the post-conviction court's findings of fact unless the evidence

preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings is *de novo* with a presumption that the findings are correct. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001). Our review of the post-conviction court's legal conclusions and application of law to facts is *de novo* without a presumption of correctness. *Id*.

When determining the knowing and voluntary nature of the guilty plea, the standard is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). *See also State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). The reviewing court must look to various circumstantial factors, including:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). In order for a guilty plea to be voluntary, the petitioner must have an understanding of the charges against him and the consequences of pleading guilty, including "the sentence that he will be forced to serve as the result of his guilty plea and conviction." *Id*. at 905. A petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

To establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688. *See also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). A fair assessment of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. *See also Nichols. v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). Deference is made to trial strategy or tactical choices if they are informed ones based upon

adequate preparation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). Once the petitioner proves that counsel's representation fell below a reasonable standard, the petitioner must also prove prejudice. *Strickland*, 466 U.S. at 694. In relation to a guilty plea, the petitioner must show a reasonable probability that, but for the errors of his counsel, he would not have pled guilty and would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Adkins v. State*, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994).

Here, the petitioner argues that trial counsel did not conduct a proper cross-examination of the police officers regarding inconsistencies between their testimony and the audio and visual evidence. The post-conviction court accredited trial counsel's testimony that he had met with the petitioner and spent several hours reviewing the evidence in preparation for trial. The court found that trial counsel did not fail in his obligations as the petitioner's counsel and that the petitioner's complaints did not meet the standards set forth in *Baxter* and *Strickland*. The evidence does not preponderate against the post-conviction court's findings. The petitioner has failed to meet the burden of proving that his trial counsel's performance was deficient by clear and convincing evidence. The record does not suggest that trial counsel's performance did not meet an objective standard of reasonableness. Thus, the petitioner is not entitled to relief based on this issue.

The petitioner also argued that the trial court failed to review the video and audio evidence that he presented at the suppression hearing. The post-conviction court found that there was no proof that the trial court did not review the evidence before it made its ruling on the motion to suppress. The evidence does not preponderate against this finding. Furthermore, considering that this court reviewed the tapes on direct appeal and found no error, the petitioner cannot show prejudice. Moreover, the petitioner has not stated that his guilty plea was unknowing or involuntary nor has he showed a reasonable probability that, but for the alleged errors of his counsel, he would not have pled guilty and would have insisted on going to trial. *See Blackledge*, 431 U.S. at 74; *Hill*, 474 U.S. at 59. Accordingly, we conclude that the petitioner is not entitled to post-conviction relief.

## Conclusion

Based on the forgoing reasons, we conclude that the petitioner's claim is without merit, and we affirm the denial of post-conviction relief.

_____

J.C. McLIN, JUDGE